| United States District Court<br>Western District of Washington | No. 2:17-cv-00561 |
|---|---|
| Duy Mai, Plaintiff,<br><br>vs.<br><br>United States et al., Defendant. | **Mr. Mai's Response to Motion to Dismiss** |

I. ARGUMENT

Mr. Mai challenges 18 U.S.C. § 922(g)(4)'s prohibition on possession of a firearm after he was involuntarily committed for mental health treatment seventeen years ago when he was a juvenile. As applied to him, (g)(4) violates his right to keep and bear arms under the Second Amendment. Mr. Mai's argument is not foreclosed by any Supreme Court or Ninth Circuit precedent. In the absence of Ninth Circuit precedent, this Court should *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678 (6th Cir. 2016) (en banc). The Second Amendment extends to Mr. Mai and (g)(4) cannot survive intermediate scrutiny because the Government cannot meet its burden of showing that (g)(4) is substantially related to an important governmental interest.

//

711 Court A, Suite 104
Tacoma, WA 98402
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Response to Motion to Dismiss - 2:17-cv-00561 - Page 1 of 10

**Statutory Framework**

18 U.S.C. § 922(g)(4) prohibits firearm possession by anyone "adjudicated as a mental defective or . . . committed to any mental institution." Bureau of Alcohol, Tobacco, Firearms, and Explosives (BATFE) regulations further define a commitment as "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily." 27 C.F.R. § 478.11. Mr. Mai acknowledges that he was involuntarily committed seventeen years ago by a Washington state court and that his commitment meets this definition. Unlike the prohibition on felons or domestic violence misdemeanants, the prohibition for those involuntarily committed does not have any "exemption" clauses. *Compare* 18 U.S.C. § 921(a)(20) (providing that felony convictions that are expunged, set aside, or for which an individual received a restoration of civil rights are not prohibiting), *and* 18 U.S.C. § 921(a)(33) (same language but for domestic violence misdemeanants), *with* 18 U.S.C. § 922(g)(4). There is a federal restoration of firearm rights statute, 18 U.S.C. § 925(c), but it has been dormant and useless for almost thirty years. *See United States v. Bean*, 537 U.S. 71 (2002); *Tyler*, 837 F.3d at 682. Thus, the prohibition for those involuntarily committed is permanent. *Tyler*, 837 F.3d at 682-83.

In 2008, Congress passed the NICS Improvement Amendments Act of 2007, Pub. L. No. 110-180, 121 Stat. 2559 (2008). In section 105 of that Act, Congress exempted involuntarily committed individuals from the prohibition in (g)(4) if the individual received a restoration of firearm rights from a state court, board, commission, or other lawful authority. However, the restoration would only be recognized federally if the state court, board, commission, or other lawful authority is required to find that the applicant will not be likely to act in a manner

711 Court A, Suite 104
Tacoma, WA 98402
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Response to Motion to Dismiss - 2:17-cv-00561 **-** Page 2 of 10

dangerous to public safety and that granting the relief would not be contrary to the public interest. *Id.* Washington state's restoration statute, RCW 9.41.047, does require a finding that the applicant "no longer presents a substantial danger to himself or herself, or the public," but does not require a finding that restoring firearm rights would not be contrary to the public interest. Thus, Washington state's statute does not meet the federal criteria for recognition and involuntarily committed residents of Washington state are still permanently prohibited from possessing a firearm.

//

### *Heller* and its aftermath

In the landmark *Heller* decision, the Supreme Court found "that the core of the Second Amendment is to allow 'law-abiding, responsible citizens to use arms in defense of hearth and home.'" *United States v. Chovan*, 735 F.3d 1127, 1133 (9th Cir. 2013) (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). However, the *Heller* Court cautioned that its decision "should [not] be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Id.* (quoting *Heller*, 554 U.S. at 626).

The *Heller* Court did not establish a proper level of scrutiny to apply to Second Amendment challenges, nor has the Supreme Court done so post *Heller*. The consensus among the federal circuits, including the Ninth Circuit, is that Second Amendment cases must be reviewed using a two-part test. First, the court asks whether the challenged law burdens conduct protected by the Second Amendment. *Chovan*, 735 F.3d at 1136. If so, courts apply the appropriate level of scrutiny. *Id.* The level of scrutiny applied depends on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that

711 Court A, Suite 104
Tacoma, WA 98402
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Response to Motion to Dismiss - 2:17-cv-00561 **-** Page 3 of 10

right. *Id.* at 1138. The Ninth Circuit generally applies intermediate scrutiny to Second Amendment cases. *See, e.g., Chovan*, 735 F.3d 1127; *Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017); *Fisher v. Kealoha*, 855 F.3d 1067 (9th Cir. 2017). Rational basis is never appropriate. *Chovan*, 735 F.3d at 1134. Intermediate scrutiny is appropriate in this case.

//

**Mr. Mai's challenge is not foreclosed by Supreme Court or Ninth Circuit precedent.**

The Ninth Circuit has issued mixed signals regarding *Heller*'s "longstanding prohibition" language. In *United States v. Vongxay*, it disagreed with Vongxay's contention that the *Heller* language is mere dicta. 594 F.3d 1111, 1115 (9th Cir. 2010). However, the court did not use *Heller* to summarily dispose of Vongxay's challenge to the constitutionality of the felon in possession statute, 18 U.S.C. § 922(g)(1). *Id.* Instead, it analyzed the impact of case law other than *Heller* on the constitutionality of (g)(1) to uphold the ban. *Id.* at 1116.

Other federal circuits have found that *Heller* leaves open as-applied constitutional challenges to 18 U.S.C. § 922(g). In *Tyler*, the Sixth Circuit concluded that while it must follow Supreme Court dicta, the *Heller* decision expressly stated that it was not clarifying the entire field of the Second Amendment and it only established a presumption that such bans were lawful. 837 F.3d at 686. But, a presumption implies that a possibility exists that the ban could be unconstitutional if attacked using an as-applied challenge. *Id.*; *accord United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *United States v. Chester*, 628 F.3d 673, 679 (4th Cir. 2010). Thus, the Sixth Circuit did not take *Heller*'s language to foreclose (g)(4) from constitutional scrutiny. *Tyler*, 837 F.3d at 686. A categorical ban is not a free pass; the Government must still show that the prohibition applies in the instant case. *Id.* at 687. To rely solely on *Heller* amounts

711 Court A, Suite 104
Tacoma, WA 98402
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Response to Motion to Dismiss - 2:17-cv-00561 **-** Page 4 of 10

to "a judicial endorsement of Congress's power to declare, 'Once mentally ill, always so.'" *Id.* at 688. But "[p]rior involuntary commitment is not coextensive with current mental illness," and "*Heller*'s presumption of lawfulness should not be used to enshrine a permanent stigma on anyone who has ever been committed to a mental institution for whatever reason." *Id.* Rather, "[s]ome sort of showing must be made to support Congress's adoption of prior involuntary commitments as a basis for a categorical, permanent limitation on the Second Amendment right to bear arms." *Id.*

The Ninth Circuit has never upheld (g)(4) against an as-applied challenge in a published opinion,[1] and it has only upheld lifetime bans when triggered by a criminal conviction. *Chovan*, 735 F.3d 1127 (domestic violence misdemeanor); *Vongxay*, 594 F.3d 1111 (felony). However, most recently the court has called into question the "constitutional correctness of categorical, lifetime bans on firearm possession" even when dealing with a felony conviction. *United States v. Phillips*, 827 F.3d 1171 (9th Cir. 2016).

Outside of criminal convictions, the Ninth Circuit has emphasized the temporal and nonpermanent nature of other disqualifiers. *Wilson v. Lynch*, 835 F.3d 1083 (9th Cir. 2016) (upholding ban on sale of firearms to medical marijuana registry card holder, but noting that "Wilson could acquire firearms and exercise her right to self-defense at any time by surrendering her registry card"); *accord United States v. Carter*, 669 F.3d 411 (4th Cir. 2012) ("First, the limited temporal reach of § 922(g)(3) necessarily means that it is less intrusive than other statutes

---

[1] *Petramala v. U.S. Dept. of Justice*, 481 F. App'x 395 (9th Cir. 2012), cited by defendants, is an unpublished decision consisting of a summary dismissal of a *pro se* litigant's inadequately briefed arguments. Unpublished opinions are not precedent. 9th Cir. R. 36-3(a).

711 Court A, Suite 104
Tacoma, WA 98402
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Response to Motion to Dismiss - 2:17-cv-00561 **-** Page 5 of 10

that impose a permanent prohibition on the possession of firearms. By initially disarming unlawful drug users and addicts while subsequently restoring their rights when they cease abusing drugs, Congress tailored the prohibition to cover only the time period during which it deemed such persons to be dangerous."); *United State v. Mahin*, 668 F.3d 119 (4th Cir. 2012) ("First, § 922(g)(8)'s prohibition on firearm possession is temporally limited and therefore exceedingly narrow. Rather than imposing a lifelong prohibition, section 922(g)(8) applies for the limited duration of the domestic violence protective order (in this case, two years). It is thus a temporary burden during a period when the subject of the order is adjudged to pose a particular risk of further abuse.").

The Ninth Circuit has expressed disfavor for permanent, categorical bans. *Phillips*, 827 F.3d 1171. Although it has never squarely ruled on the issue, at least the Sixth, Seventh, and Fourth Circuits have all held that *Heller*'s language regarding felons and the mentally ill is precautionary, and does not foreclose challenges to 18 U.S.C. § 922(g). This Court should adopt the reasoning of those circuits, hold that (g)(4) burdens Mr. Mai's Second Amendment rights, and proceed to intermediate scrutiny analysis.

//

**The Government cannot prove that (g)(4) is substantially related to an important government interest.**

To overcome intermediate scrutiny, the government's stated objective must be significant, substantial, or important and there must be a reasonable fit between the challenged regulation and the asserted objective. *Chovan*, 735 F.3d at 1139. It's no secret that regulating firearm possession is a significant interest and Mr. Mai concedes this prong. However, the

711 Court A, Suite 104
Tacoma, WA 98402
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Response to Motion to Dismiss - 2:17-cv-00561 - Page 6 of 10

Government cannot produce sufficient competent evidence to substantiate a link between those who have been involuntarily committed and those who are prone to gun violence. Therefore, (g)(4) does not survive intermediate scrutiny.

Absent clear precedent from the Ninth Circuit on this issue, this Court should adopt the Sixth Circuit's reasoning in *Tyler*. *Am. Vantage Co., Inc. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002) ("[A]lthough we are by no means compelled to follow the decisions of other circuits, 'there is virtue in uniformity of federal law as construed by the federal circuits.' Where, as here, every other circuit to have addressed an important question of federal law has reached a common result, we give some weight to the interest in uniformity.").

In *Tyler*, the Sixth Circuit found 18 U.S.C. § 922(g)(4)'s permanent ban on firearm possession in violation of the Second Amendment as applied. 837 F.3d 678. Tyler was involuntarily committed in 1985 following a brief depressive episode because of his divorce. *Id.* at 683. Tyler had no prior or subsequent episodes of mental illness. *Id.* at 683-84. In 2012, he received a psychological evaluation concluding that he did not present with any evidence of mental illness. *Id.* at 684. Tyler attempted to purchase a firearm but was denied by NICS due to his involuntary commitment. *Id.* His home state was Michigan, which, like Washington, is not an approved state under the NICS Improvement Amendments Act of 2007. *Id.* He sued, challenging the (g)(4) permanent prohibition as violative of the Second Amendment as applied to him. *Id.*

Finding a lack of historical support for *Heller*'s pronouncement regarding firearm possession by the mentally ill, the *Tyler* court found that "people who have been involuntarily committed are not categorically unprotected by the Second Amendment." *Id.* at 690. Specifically, the court noted that the "historical evidence cited by *Heller* and the government

711 Court A, Suite 104
Tacoma, WA 98402
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Response to Motion to Dismiss - 2:17-cv-00561 - Page 7 of 10

does not directly support the proposition that persons who were once committed due to mental illness are forever ineligible to regain their Second Amendment rights." *Id.* at 689.

Shifting to the two-step analysis, the court applied intermediate scrutiny and found the Government's evidence that (g)(4) is substantially related to an important government interest lacking. *Id.* at 694. Specifically, the court pointed out that none of the legislative history and studies cited by the Government in its attempt to save (g)(4) showed that an individual who had been involuntarily committed was more likely to engage in gun violence. *Id.* at 694-99.

Much like the Government in *Tyler*, the Government in this case attempts to prove a link between involuntary commitment and gun violence using inapposite evidence. It says that Congress acted logically in extending the prohibition to anyone who has ever been involuntarily committed, but it cites no evidence as to why an involuntary commitment automatically means that the committed individual is prone to violence *forever*. The Government cites Congress's reasonable reliance on "actual evidence," but does not actually cite any of it. Instead, it asks this Court to defer to Congress's choice to "err on the side of caution," but again cites no evidence as to why imposing a lifetime ban actually constitutes erring on the side of caution.

It then attempts to cite empirical evidence that an involuntary commitment translates to a lifetime propensity for violence. Almost every single study cited deals with how a person who is *actively mentally ill* is prone to increased risk of harm to themselves or others. One study is so narrow that it only relates to discharged mental patients with coexisting substance-abuse diagnoses, a factor not relevant in this case. Some of the studies cited don't even have anything to do with mental illness, they are just studies on how a firearm in a home affects the chances of a suicide. The Government only cites one study that deals specifically with suicide rates as they

711 Court A, Suite 104
Tacoma, WA 98402
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Response to Motion to Dismiss - 2:17-cv-00561 - Page 8 of 10

relate to an individual who has been involuntarily committed, and even that study is dubious at best. 1 Virginia A. Hiday, *Civil Commitment: A Review of Emperical Research*, 6 Behav. Sci. & L. 15, 25 (Winter 1988). In that study, ten people out of 189 committed suicide within nineteen months of entering the commitment process. That amounts only to five percent and does not specify whether those ten committed suicide during treatment or after having successfully completed treatment. Also, the study focused on nineteen months whereas it has been seventeen years since Mr. Mai was committed.

As noted in *Tyler*, "None of the government's evidence squarely answers the key question at the heart of this case: Is it reasonably necessary to forever bar all previously institutionalized persons from owning a firearm?" 837 F.3d 697. And, as also noted in *Tyler*, Congress's clear answer to that question is "no," as evidenced by its passage of the NICS Improvement Amendments Act of 2007. *Id.* ("It is a clear indication that Congress does not believe that previously committed persons are sufficiently dangerous as a class to permanently deprive all such persons of their Second Amendment right to bear arms.").

Although the Government does a fine job of linking *mental illness* and gun violence, and maybe even an involuntary commitment as a sign of mental illness, it fails to substantiate a need between preventing gun violence and prohibiting involuntarily committed individuals from possessing a firearm *forever*. The Government has not cited to any legislative history or studies that show a concrete link between an involuntary commitment and continued propensity for violence for the rest of that person's life. It certainly has not shown that Mr. Mai is prone to violence despite being committed seventeen years ago. Thus, the Government cannot defeat Mr. Mai's as-applied challenge and this Court must deny the motion to dismiss.

711 Court A, Suite 104
Tacoma, WA 98402
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Response to Motion to Dismiss - 2:17-cv-00561 **-** Page 9 of 10

## II. Conclusion

Based on the foregoing, this Court should deny the motion to dismiss.

Respectfully submitted,

/s/ Vitaliy Kertchen

_____
Vitaliy Kertchen WSBA#45183
Attorney for Mr. Mai
Date: 7/10/17

I hereby certify that on 7/10/17, I electronically filed the foregoing with the clerk of the court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: None.

Respectfully submitted,

/s/ Vitaliy Kertchen

_____
Vitaliy Kertchen

711 Court A, Suite 104
Tacoma, WA 98402
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Response to Motion to Dismiss - 2:17-cv-00561 - Page 10 of 10