HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DUY T. MAI, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Defendants. | CASE NO. C17-0561 RAJ <br><br> ORDER |

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss. Dkt. # 4. Plaintiff Duy T. Mai opposes the Motion. Dkt. # 6. For the reasons that follow, the Court **GRANTS** Defendants' Motion.

## II. BACKGROUND

The following is taken from Plaintiff's Complaint, which is assumed to be true for the purposes of this motion to dismiss. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

Plaintiff brings this action against Defendants United States of America; the Department of Justice ("DOJ"); the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"); the Federal Bureau of Investigation ("FBI"); Jefferson B. Sessions

ORDER - 1

III, as Attorney General; Andrew McCabe, as Acting Director of the FBI; and Thomas E. Brandon, as Acting Director of the ATF, for alleged violations of his Second and Fifth Amendment rights.  Dkt. # 1 ¶¶ 1.1-1.8, 4.1, 4.2.

In October of 1999, when Plaintiff was seventeen (17) years old, he was involuntarily committed for mental health treatment by the King County Superior Court. Plaintiff's commitment expired by August 8, 2000[1], and he has not been committed since. *Id*. ¶ 3.1.  In 2001, Plaintiff enrolled in Evergreen Community College where he completed his GED and earned college credit that enabled him to transfer to the University of Washington.  *Id*. ¶ 3.3.  Plaintiff graduated from the University of Washington with a bachelor's of science degree in microbiology.  After graduating, Plaintiff enrolled in a master's program at the University of Southern California.  *Id*.  He graduated with a master's degree in microbiology in 2009.  Plaintiff then began working at Benaroya Research Institute.  As part of his job, he successfully passed an FBI background check.  *Id*. ¶ 3.4.  In October of 2016, Plaintiff began working for Fred Hutchinson Cancer Research Center as an immune monitoring specialist and is currently employed there.  *Id*. ¶ 3.6.

In 2014, Plaintiff petitioned the King County Superior Court under Washington statute RCW 9.41.047 for restoration of his firearm rights.  Plaintiff supplied the court with medical and psychological examinations and supportive declarations.  His petition was granted.     *Id*. ¶ 3.9. Plaintiff then attempted to purchase a firearm and received a denial from the National Instant Criminal Background Check System ("NICS").  NICS informed him that the denial was based on 18 U.S.C. § 922(g)(4).  *Id*. ¶ 3.10.  Plaintiff subsequently received a phone call from the ATF, notifying him that the ATF legal

---

[1] Plaintiff does not provide further explanation as to what this "expiration" entails. Therefore, the Court presumes that Plaintiff was released from his commitment on that date.

department determined that his state restoration order was not sufficient to overcome the federal prohibition in 18 U.S.C. § 922(g)(4). *Id*. ¶ 3.11.

On April 11, 2017, Plaintiff filed a complaint alleging that Defendants violated his Second Amendment and Fifth Amendment rights by denying him the ability to "keep, bear and purchase" firearms. *Id*. ¶¶ 4.1, 4.2.

### III. LEGAL STANDARD

#### A. FRCP 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### IV. DISCUSSION

#### A. Federal Statutory and Regulatory Background

Under 18 U.S.C. § 922(g)(4), it is unlawful for any person "who has been adjudicated as a mental defective or who has been committed to a mental institution" to

purchase a firearm. 18 U.S.C. § 922(g)(4); 17 C.F.R. § 478.11. 18 U.S.C. § 925(c) provides for a "relief-from-disability" program to be administered through the Attorney General. This program was defunded in 1992. Dkt. # 1. ¶ 3.12. In 2008, Congress passed the NICS Improvements Amendments Act ("NIAA"). Pub. L. No. 110-180, 122 Stat. 2559. The NIAA authorizes federal grants to states to assist them in determining which individuals are eligible to purchase and possess firearms and to aid them in supplying accurate information to federal databases. *Id.* To be eligible for these grants, a state must certify to the Attorney General that it has implemented a relief-from-disabilities program under which an individual who, pursuant to state law, has been adjudicated "mentally defective" or has been "committed to a mental institution" may apply for "relief from the disabilities imposed" by 18 U.S.C. § 922(g)(4). Pub. L. No. 110-180, §§ 103-105, 121 Stat. 2559, 2568-69 (2008).

A qualifying state program shall grant relief if "the circumstances regarding the disabilities . . . and the person's record and reputation, are such that the person will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." *Id.* The NIAA requires that a state court or other lawful authority reviewing a petition for relief from a firearms disability imposed by 18 U.S.C. § 922(g)(4) consider three factors when determining whether to grant or deny the requested relief: (1) the circumstances regarding the firearms disability imposed by 18 U.S.C. § 922(g)(4); (2) the petitioner's "record"; and (3) the petitioner's "reputation". *Id*. § 105(a)(2). The NIAA also requires that when a state court or other lawful authority grants a petitioner relief from a firearms disability, the court must find that the petitioner "will not be likely to act in a manner dangerous to public safety," and that "the granting of the relief would not be contrary to the public interest." *Id*. § 105(a)(2).

Washington State's restoration statute pre-dates the NIAA. RCW 9.41.047. This statute does not comply with the NIAA because the provisions for restoration of rights

after involuntary commitment do not meet the requirements of the federal statute. Dkt. # 4 at 5. Plaintiff argues that because he is unable to obtain restoration of his right to possess firearms through the state of Washington's program, he has no relief available to him and he is subject to a lifetime prohibition on firearm possession in violation of his Second and Fifth Amendment rights.

**B. Second Amendment Claim**

*a. Conduct Protected by the Second Amendment*

The Second Amendment confers "an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 575 (2008). In *Heller*, the Supreme Court considered whether the District of Columbia's regulations barring the possession of handguns both inside and outside the home, and requiring that other firearms be kept "unloaded and disassembled or bound by a trigger lock or similar device," violated the plaintiff's Second Amendment Rights. *Id.* at 628-29. After undergoing a historical analysis of the original meaning of the amendment, the Supreme Court concluded that the right of self-defense was central to the Second Amendment right to keep and bear arms and found that prohibiting the possession of handguns was unconstitutional. *Id.* The Supreme Court also found that the District of Columbia's requirement that other firearms in the home be "rendered and kept inoperable at all times" made it impossible for citizens to use firearms for self-defense, and thus, was also unconstitutional. *Id.* at 630. In undertaking its analysis regarding the impact of the District of Columbia's regulations on the plaintiff's Second Amendment rights, the Supreme Court noted that "the right secured by the Second Amendment is not unlimited," and that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Id.* at 626-27. In a footnote, the *Heller* Court referred to these "longstanding prohibitions" as "presumptively lawful regulatory measures." *Id*. at 626 n.26.

The Ninth Circuit has interpreted the *Heller* decision to suggest a two-step inquiry for addressing Second Amendment challenges to regulations. *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 960 (9th Cir. 2014). This two-step inquiry, "(1) asks whether the challenged law burdens conduct protected by the Second Amendment" based on a historical understanding of the scope of the Second Amendment, "and (2) if so, directs courts to apply an appropriate level of scrutiny." *Id.* (citing *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)). "To determine whether a challenged law falls outside the historical scope of the Second Amendment, we ask whether the regulation is one of the 'presumptively lawful regulatory measures' identified in *Heller*, or whether the record includes persuasive historical evidence establishing that the regulation at issue imposes prohibitions that fall outside the historical scope of the Second Amendment." *Id.* (quoting *Heller*, 554 U.S. at 627 n. 26); *see also Chovan*, 735 F.3d at 1137. 18 U.S.C. § 922(g)(4), which is a prohibition on the possession of firearms by the mentally ill, is a "presumptively lawful regulatory measure." Thus, analysis of the constitutionality of the regulation need not proceed to the second step of the inquiry.

Plaintiff argues that the language in *Heller* only established a presumption that such bans are lawful, and as such, it left open the possibility of an as-applied constitutional challenge to 18 U.S.C. § 922(g)(4). Specifically, Plaintiff argues that the statute is unconstitutional as applied to him because he has had no mental health issues since he was involuntarily committed at the age of 17. Plaintiff further argues that an involuntary commitment does not equate to mental illness such that it provides a basis for a permanent limitation on his right to bear arms. The Ninth Circuit has yet to rule on a Second Amendment challenge to 18 U.S.C. § 922(g)(4) in a published opinion, but it has rejected as-applied challenges to 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms, also one of the enumerated "presumptively legal regulatory measures" in *Heller*. *Heller*, 554 U.S at 626-27. While the historical reasons for prohibiting felons from possessing firearms differ slightly from those relevant to the

mentally ill, these cases provide insight as to how the Ninth Circuit views the regulatory measures listed as "presumptively lawful" with regards to as-applied challenges.

In *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), the Ninth Circuit expressly rejected the defendant's argument that the "presumptively legal" language in *Heller* was not binding, stating that the language was "integral" to the holding. *Id.* at 1115. Citing the Supreme Court's commentary regarding the longstanding prohibitions on the possession of firearms, the court specifically stated that felons, by virtue of being included among those that have long been prohibited from possessing firearms, are "categorically different from the individuals who have a fundamental right to bear arms." *Id*. The court then rejected the defendant's as-applied challenge to the statute based on *Heller* and its holding in *United States v. Younger*, 398 F.3d 1179 (9th Cir. 2005)[2]. *Id.* at 1116 (stating that its holding is "buttressed by the fact that *Younger* upheld the very type of gun possession restriction that the Supreme Court deemed 'presumptively lawful'"). Referring to its decision in *Younger,* the court also noted that it declined to make a distinction between violent and non-violent felons and held that section 922(g)(1), which prohibits all felons from possessing firearms, was constitutional. *Id.* The holding in *Vongxay* continued to be upheld in several decisions involving as-applied challenges to section 922(g)(1), including the decision in *United States v. Phillips*, 827 F.3d 1171 (9th Cir. 2016). In *Phillips,* the Ninth Circuit rejected the defendant's argument that his conviction for a non-violent felony could not constitutionally serve as a basis for depriving him of his right to possess a firearm, noting that it was "hard pressed"

---

[2] The circuit court noted that it held that 18 U.S.C. § 922(g)(1) does not violate the Second Amendment rights of a convicted felon in its decision in *United States v. Younger*, 398 F.3d 1179 (9th Cir. 2005). However, the holding upon which *Younger* was based was partially invalidated by the decision in *Heller*. Citing to *In re Osborne*, 76 F.3d 306 (9th Cir. 1996), the court concluded that, because only a court *en banc* has the authority to overrule a decision of a previous panel, and the doctrine of *stare decisis* concerns the holdings of previous cases, not the rationales, *Younger* still controls. *Vongxay*, 594 F.3d at 1116.

to conclude that a felony "cannot serve as the basis of a felon firearm ban, simply because its *actus reus* may appear innocuous." *Phillips*, 827 F. 3d at 1176; *see also United States v. Chovan*, 735 F.3d 1127, (9th Cir. 2013); *Van Der Hule v. Holder*, 759 F.3d 1043, 1050–51 (9th Cir. 2014).

Further, the Ninth Circuit has ruled on a Second Amendment challenge to 18 U.S.C. § 922(g)(4) in one unpublished opinion. While the decision is not precedential, it is instructive regarding this circuit's approach to as-applied challenges to the statute. In *Petramala v. U.S. Dep't of Justice*, the Ninth Circuit affirmed a district court's finding that the language in *Heller* was appropriate as applied to restrict the plaintiff's right to possess firearms. *See Petramala v. U.S. Dep't of Justice*, 481 F. App'x 395, 396 (9th Cir. 2012); *see also Petramala v. U.S. Dep't of Justice*, No. CV 10-2002-PHX-FJM, 2011 WL 3880826, at *2 (D. Ariz. Sept. 2, 2011), aff'd, 481 F. App'x 395 (9th Cir. 2012). The plaintiff argued that section 922(g)(4) unconstitutionally deprived him of his right to possess firearms because he was not a danger to himself or others and should not be classified as mentally defective. *Id.* Citing to the "longstanding prohibition" language in *Heller,* the Ninth Circuit found that the district court properly dismissed the plaintiff's Second Amendment claim because his status as mentally defective, as defined by 18 U.S.C. § 922(g)(4) and 27 C.F.R. § 478.11, allowed for constitutionally permissible limits on his right to bear arms. *Id.*

Case law clearly indicates that the Ninth Circuit does not, as Plaintiff argues, consider the language in *Heller* as merely "precautionary". Dkt. # 6 at 6. Ninth Circuit case law also indicates that Plaintiff's arguments that section 922(g)(4) are unconstitutional as applied to him also do not pass muster. Like the plaintiffs in *Phillips* and *Petramala*, the crux of Plaintiff's argument is that section 922(g)(4) unconstitutionally deprives him of his right to keep and bear arms because he no longer suffers from his "condition" and is presumably not a danger to the public. When considering arguments regarding as-applied challenges to prohibitions included in *Heller*

as "presumptively legal", the Ninth Circuit has consistently rejected arguments that the constitutionality of a prohibition on possession turns on whether there is evidence that the specific plaintiff is violent or non-violent. Thus, Plaintiff's argument that the Court should find that his involuntary commitment and alleged past mental health issues do not provide a constitutional basis for a prohibition on his right to bear arms is unpersuasive.

Plaintiff also fails to plead sufficient facts to distinguish himself from those historically barred from Second Amendment protections: the mentally ill. Plaintiff does not dispute that he meets the definition of someone "committed to a mental institution" under 18 U.S.C. § 922(g)(4). The term "committed to a mental institution" in 18 U.S.C. § 922(g)(4) is defined by regulation as:

> A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use.

17 C.F.R. § 478.11. While Plaintiff provides very few details regarding his commitment for mental health treatment, he does allege that he was involuntarily committed by the King County Superior Court in October of 1999. Dkt. # 1 ¶ 3.1. While Plaintiff does not specifically allege that he had a mental illness, he alleges that he had a "condition" that led to the involuntary commitment, and that he at some point used medication to control his condition. *Id*. ¶¶ 3.1, 3.8. Plaintiff does not provide the exact date in October that he was committed, but he alleges that his commitment expired by August 8, 2000. Thus, based on the facts alleged, Plaintiff was presumably committed for close to a year. Although Plaintiff contends that he no longer has a "condition", he fails to allege facts sufficient to support that contention. In making that contention, Plaintiff assumes that living a "socially-responsible, well-balanced, and accomplished life" is an indication that he does not suffer from a mental illness or mental defect. That

assumption is a gross generalization that mischaracterizes what it means to live with a mental illness and implies that the mentally ill cannot have a productive and fulfilling life. *Id.* ¶¶ 3.3, 3.8. Plaintiff also alleges that he submitted medical and psychological examinations to the King County Superior Court when he petitioned for restoration of his firearm rights under RCW 9.41.047 and that the court granted his petition. *Id*. ¶ 3.9. Again, Plaintiff fails to allege facts showing how the court's grant of his petition distinguishes him from the mentally ill. Washington State's restoration statute, RCW 9.41.047, requires a finding that the applicant "no longer presents a substantial danger to himself or herself, or the public," not a finding that the petitioner no longer suffers from the condition related to the commitment. Therefore, Plaintiff fails to state a claim that 18 U.S.C. § 922(g)(4) violates the Second Amendment as it applies to him.

### *b. Appropriate Level of Scrutiny*

Even if Plaintiff could show that challenged law burdens conduct protected by the Second Amendment, Plaintiff's claim fails under the second step of the two-pronged analysis established by the Ninth Circuit. "The level of scrutiny in the Second Amendment context should depend on the nature of the conduct being regulated and the degree to which the challenged law burdens the right." *Chovan*, 735 F.3d at 1138. The parties agree that the appropriate level of scrutiny for a regulation when Second Amendment rights are at issue is intermediate scrutiny. To pass intermediate scrutiny, Defendants must show: "(1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." *Id.* at 1139. Plaintiff concedes that regulation of firearm possession is a significant interest. However, Plaintiff argues that 18 U.S.C. § 922(g)(4) does not pass the second element of the intermediate scrutiny standard.

According to both case law and the legislative history of the statute at issue, the asserted objective of regulation of firearm possession includes preventing firearm violence to promote public safety as well as suicide prevention. S. Rep. No. 89-1966

at 1; 114 Cong. Rec. 13,219 (statement of Sen. Tydings); 114 Cong. Rec. 21,829 (statement of Rep. Bingham). The Supreme Court has recognized that the Government's interest in suicide prevention is "unquestionably important and legitimate". *Washington v. Glucksberg*, 521 U.S. 702, 735 (1997). Thus, in analyzing the "fit" between section 922(g)(4) and regulation of firearm possession, the issue for this Court to analyze, is whether prohibiting those who have been committed to a mental institution from bearing arms is substantially related to these stated objectives. Defendants provide ample evidence to support this connection.

First, Defendants argue that Congress relied on a history of involuntary commitment or adjudicated mental illness as the basis for preventative firearm prohibition when it enacted section 922(g)(4). *See* 114 Cong. Rec. 14,773 (1968) (Sen. Long) (stating that mentally ill individuals, "by their actions, have demonstrated that they are dangerous, or that they may become dangerous").

Second, Defendants provide reference to numerous studies that indicate that those with a history of mental illness bear a significant additional risk of gun violence than those in the general population, both against others as well as against themselves. *See e.g.* Seena Fazel & Martin Grann, *The Population Impact of Severe Mental Illness on Violent Crime*, 163 Am. J. Psychiatry 1397, 1401 (Aug. 2006); Joseph R. Simpson, *Bad Risk? An Overview of Laws Prohibiting Possession of Firearms by Individuals With a History of Treatment for Mental Illness*, 35 J. Am. Acad. Psychiatric Law 330, 338 (2007); Richard A. Friedman, *Violence and Mental Illness – How Strong Is the Link?*, 355 New Eng. J. Med. 2064, 2065 (Nov. 2006); Richard Van Dorn et al., *Mental Disorder and Violence: Is There a Relationship Beyond Substance Use?*, 47 Soc. Psychiatry & Psychiatric Epidemiology 487 (Mar. 2012); Bryan L. Tanney, *Psychiatric Diagnoses and Suicidal Acts*, in Ronald W. Maris et al., *Comprehensive Textbook of*

*Suicidology* 339 (2000); Matthew Miller & David Hemenway, *Guns and Suicide in the United States*, 359 New English J. Med. 989, 989-90 (Sept. 2008).

To pass the substantial relationship inquiry, Defendants need only show that the "fit" between the asserted interest and the challenged law is reasonable, and that the regulation at issue is substantially related to the Government's interest in promoting public safety and preventing suicide. *See Chovan*, 735 F.3d at 1142; *see also United States v. Chapman,* 666 F.3d 220, 231 (4th Cir. 2012). Defendants have more than satisfied this element of the analysis.[3] Plaintiff fails to show that 18 U.S.C. § 922(g)(4) does not pass constitutional muster under intermediate scrutiny. Therefore, Defendants' motion to dismiss Plaintiff's Second Amendment claim is **GRANTED.**

**C. Fifth Amendment Claim**

Defendants argue that Plaintiff fails to state a claim for violation of his due process rights because he does not allege any defect in his involuntary commitment proceeding. Defendants further argue that if Plaintiff is claiming that the statute at issue, and not the process under which he was deprived of his rights, deprived him of his right to bear and keep arms without due process, such claims should be analyzed under the Second Amendment. "[T]he right to keep and to bear arms for self-defense . . . is more appropriately analyzed under the Second Amendment." *Nordyke v. King*, 644 F.3d 776, 794 (9th Cir. 2011), on reh'g en banc, 681 F.3d 1041 (9th Cir. 2012); *see also Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion

---

[3] Although Plaintiff makes an as-applied challenge to section 922(g)(4), he makes no argument as to whether the application of the statute to him is substantially related to the Government's stated interest. In the absence of any evidence that someone with Plaintiff's condition or in similar circumstances does not bear an additional risk of gun violence or suicide, the Court concludes that the application of section 922(g)(4) to Plaintiff is substantially related to the Government's interest. *See Chovan*, 735 F.3d at 1142.

of substantive due process, must be the guide for analyzing these claims."). The Court agrees. Further, Plaintiff does not offer any argument to the contrary. Defendants' motion to dismiss Plaintiff's Fifth Amendment claim is **GRANTED.**

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss. Dkt. # 4.

Dated this 8th day of February, 2018.

*/s/ Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge